IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Criminal Case No. 06-cr-00192-LTB

UNITED STATES OF AMERICA,

    Plaintiff,

v.

WILLIAM ORR,

    Defendant.
___

ORDER
___

This matter is before me on Defendant's Rule 29 Motion for Judgment of Acquittal and Rule 33 Motion for a New Trial [Doc # 498] and Supplement and Addendum to Rule 29 Motion for Judgment of Acquittal and Rule 33 Motion for a New Trial [Doc # 531]. After consideration of the motion and supplement, all related pleadings, and the case file, I deny the motion as set forth below.

## I. Background

On May 28, 2008, following an eight week trial, the jury returned its verdict finding Defendant guilty of the following counts in the Indictment: (1) Counts 1 through 8, which charged Defendant with a scheme to defraud and to obtain money from a group of people who invested in Octane International Ltd. ("Octane"); (2) Counts 9 through 14, which charged Defendant with a scheme to defraud and to obtain money from the United States government; (3) Counts 15 and 17, which charged Defendant with the submission of false documents to the Environmental Protection Agency (the "EPA"); and (4) Counts 23 through 28, which charged Defendant with willfully failing to file tax returns. The jury failed to reach a verdict on Counts

19 through 22, which charged Defendant with tax evasion.  Counts 16 and 18 of the Indictment were dismissed prior to trial.

By the motion, Defendant requests that judgments of acquittal be entered "on all of the fraud counts and the false statement counts," as well as Counts 18-22 (tax evasion) and Counts 23-28 (willful failure to file tax returns ).  In the alternative, Defendant requests that a new trial be ordered "on any counts where acquittal is not entered because [Defendant] was deprived of a fair trial and due process."

## II.  Standard of Review

Under Fed. R. Crim. P. 29, a judgment of acquittal must be entered upon request for any offense "for which the evidence was insufficient to sustain a conviction."  The evidence – both direct and circumstantial, with the reasonable inferences to be drawn therefrom – is insufficient if, when taken in the light most favorable to the government, no reasonable jury could find the defendant guilty beyond a reasonable doubt.  *United States v. Hooks,* 780 F.2d 1526, 1531 (10th Cir. 1986), *cert. denied,* 475 U.S. 1128 (1986).  Thus, the question under Rule 29 is not whether I believe that the evidence at trial was sufficient to establish Defendant's guilt beyond a reasonable doubt but whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt.  *Id.*   The evidence supporting the conviction must be "substantial" and "do more than raise a suspicion of guilt," but "need not conclusively exclude every other reasonable hypothesis" and "need not negate all possibilities except guilt."  *United States v. Vallejos,* 421 F.3d 1119, 1122 (10th Cir. 2005).

Under Fed. R. Crim. P. 33, a court may grant a new trial upon request "if the interest of justice so requires."  A motion for a new trial is regarded with disfavor, *United States v.*

2

*Quintanilla,* 193 F.3d 1139, 1146 (10th Cir. 1999), *cert. denied,* 529 U.S. 1029 (2000), and should only be granted in exceptional cases where the evidence preponderates heavily against the verdict. *United States v. Evans,* 42 F.3d 586, 593-4 (10th Cir. 1994).

### III. Analysis

A. Motion for Judgment of Acquittal

    1. **Charges for Mail Fraud Against Investors (Counts 1 through 8)**

In support of Counts 1 through 8 of the Indictment, the Government alleged that in order to solicit investors in Octane Defendant falsely represented that (1) Octane owned the patent for Defendant's vapor phase combustion fuel additive ("VPC"); (2) VPC was ready to be produced and marketed; (3) scientific testing demonstrated that VPC had substantial benefits over conventional gasoline regarding both decreased nitrogen oxide ("NOx") emissions and increased fuel efficiency; (4) Exxon wanted to purchase VPC and its patent for $30 million or above; (5) Prudential was interested in furnishing substantial funds to Octane; (6) investor monies would be used to finish developing and marketing VPC; and (7) investors would receive Octane shares and would reap substantial profits due to an imminent initial public offering ("IPO") and/or other substantial increase in Octane share price. The Government further alleged that Defendant made similar representations, including specific references to the results of testing performed on VPC by the National Institute of Petroleum and Energy Research ("NIPER") and the National Alternative Fuels Foundation ("NAFF"), in subsequent shareholder newsletters and updates for purposes of soliciting new and additional investments and to appease prior investors.

Defendant argues that his conviction on Counts 1 through 8 of the Indictment must be overturned because the Government's allegations concerning these representations "were proven

3

to be false." Defendant proceeds to cite evidence presented at trial that contradicts the Government's assertions that many of the alleged representations were false or that he represented that Exxon was interested in buying the VPC technology. In response, the Government cites evidence to support a finding by the jury that Defendant made these representations and that each of them was false. In light of such conflicting evidence, I cannot conclude that there was insufficient evidence to support Defendant's conviction on Counts 1 through 8 without impermissibly re-weighing the evidence and the credibility of witnesses. *See Burks v. United States,* 437 U.S. 1, 16 (1978) ("Even the trial court, which has heard testimony of witnesses firsthand, is not to weigh the evidence or assess the credibility of witnesses when it judges the merits of a motion for acquittal.").

Although Defendant disputes that the Government proved any of the misrepresentations alleged in support of Counts 1 through 8, his primary argument which recurs throughout the motion is that the Government presented no evidence that Defendant misrepresented the results of the NIPER testing done on VPC. This argument therefore merits special consideration. Despite his assertion that there was no evidence that he misrepresented the NIPER test results, Defendant acknowledges that William Marshall testified at trial that he advised Defendant that some of the data in the NIPER test results was wrong. Other witnesses testified that they told Defendant that testing performed by NAFF failed to demonstrate any positive benefits from the use of VPC, thereby further supporting a finding that Defendant knew that the NIPER test results were wrong. Defendant argues, however, that the relevant testimony of these witnesses, Mr. Marshall in particular, was erroneously admitted because it constituted expert opinions from lay witnesses. The crux of Defendant's argument regarding the NIPER test results then is

4

essentially that the supporting evidence was erroneously admitted. This argument will therefore be addressed in the context of Defendant's motion for a new trial under Rule 33.

Defendant also cites to the trial testimony of Frank Cox and Donald Stedman, defense experts who generally testified that Defendant accurately represented the results of the NIPER tests and that these results were consistent with what is generally known about the components of VPC. The jury, however, was free to reject the opinions of these witnesses, and I may not substitute my impressions of these witnesses or their testimony with those of the jury.

Faced with conflicting evidence regarding the NIPER test results, it was within the province of the jury to conclude that Defendant falsely represented these results to investors. It was likewise within the province of the jury upon extensive and substantial evidence to conclude that Defendant made other misrepresentations as alleged by the Government. I am therefore unable to conclude that there was insufficient evidence to sustain Defendant's conviction on Counts 1 through 8, and Defendant's motion for judgment of acquittal on these counts must fail.

### 2. Charges for Mail and Wire Fraud Against and False Statements to EPA (Counts 9 through 15 & 17)

In seeking to overturn his conviction for mail and wire fraud and false statements against the EPA in Counts 9 through 15 and Count 17, Defendant first asserts that the EPA did not and would not have relied on any representations he made regarding the NIPER test results because it was compelled to honor congressional intent and had no discretion in awarding the $3.6 million in earmarked funds to NAFF. If accurate, this assertion would negate the necessary finding that any misrepresentations Defendant made to the EPA were "material," or capable of influencing the actions of the EPA.

To demonstrate that the EPA had no discretion in awarding the earmarked funds to

NAFF, Defendant primarily cites the trial testimony of Margo Oge. Ms. Oge did testify that under a "set-aside," such as the earmarked funds for NAFF, "Congress directs EPA to provide the resources to a specific organization, in this case to NAFF [s]o you really don't have a lot of discretion to what extent NAFF is qualified or not." As the government points out, however, other witnesses testified that they would have taken some adverse action had they known that Defendant had provided false information, including not recommending that the NAFF grant proceed. Evidence was also presented at trial that the EPA ultimately suspended disbursements under the NAFF grant, thereby demonstrating that the EPA had some level of discretion in administering it. Once again then, I cannot conclude that there was insufficient evidence to support the requisite finding of materiality in Counts 9 through 15 and Count 17 without impermissibly re-weighing the evidence and the credibility of witnesses. *Burks*, *supra*.

Defendant also restates his argument that there was no evidence that he misrepresented the NIPER test results in support of overturning his conviction on the charges of fraud against the EPA. As set forth above, based on the evidence presented at trial, it was within the province of the jury to conclude that Defendant misrepresented these results. The question of whether the government's supporting evidence in the form of testimony from Mr. Marshall and other witnesses was erroneously admitted because it constituted expert opinions from lay witnesses will be addressed in the context of Defendant's motion for a new trial. Defendant is, however, not entitled to a judgment of acquittal based on the purported lack of evidence to support a finding that he misrepresented the NIPER test results.

Finally, Defendant argues that his conviction for mail and wire fraud and false statements against the EPA must be overturned because he did not misrepresent ownership of the patent for

VPC and the EPA did not rely on such representations in any event. It was undisputed that Defendant was identified as the registered owner of the patent in the records of the United States Patent Office. In support of his argument that he nonetheless did not misrepresent that Octane owned the patent for VPC, Defendant cites testimony purportedly establishing that he had an agreement with Octane to formally assign the patent to it once the VPC technology was ready for commercialization, which agreement Defendant argues vested Octane with equitable ownership of the patent. The theory of equitable ownership was presented to the jury for its consideration by appropriate instruction. In response, the Government cites evidence sufficient to cause a reasonable jury to question the validity and existence of any such agreement, including the Defendant's control over Octane and failure to make the assignment to Octane despite Scott Shires' request that he do so. This conflicting evidence precludes a determination that there was insufficient evidence to support a finding by the jury that Defendant misrepresented the ownership of the patent for VPC.

There was likewise conflicting evidence regarding the materiality of these representations to the EPA. Although Jennifer Dolin's trial testimony suggested that the EPA did not require any documentation regarding ownership of the patent for the VPC technology, she also testified that Defendant told her that Octane owned the patent and that she understood that NAFF had a license from Octane to test the technology. Katherine Moore further testified that the EPA "must have documentation of ... who owns the technology before [it] can make the [grant] award" and that it was her understanding that NAFF was going to be testing Octane's technology. Thus, I am unable to conclude that there was insufficient evidence to support a finding by the jury that Defendant's representations regarding the ownership of the patent for VPC were material to the

EPA.

I further note that it was not essential that the jury find that Defendant misrepresented the ownership of the patent for VPC to convict him on Counts 9 through 15 and Count 17. Counts 9 through 14 of the Indictment allege a scheme to defraud through the submission of documents to the EPA which Defendant knew contained material falsities, "*including* specifically, the false NIPER test results for VPC; and falsities regarding the ownership of the patent for VPC." (Emphasis added). The jury was also instructed that the Government was not required to prove that all of the alleged false representations were part of the scheme to defraud but that they had to be satisfied, beyond a reasonable doubt, that at least one material falsehood that they all agreed on was part of the scheme. Counts 15 and 17 are devoid of any reference to alleged misrepresentations by Defendant regarding ownership of the patent for VPC.

For these reasons, I am unable to conclude that there was insufficient evidence to sustain Defendant's conviction on Counts 9 through 15 and Count 17, and Defendant's motion for judgment of acquittal on these counts must fail.

### 3. Tax Evasion Charges (Counts 19 through 22)

Defendant's argument that he is entitled to a judgment of acquittal on the tax evasion charges is primarily predicated on alleged deficiencies in the analysis of the Government's expert, Peter Shepka. Specifically, Defendant argues that Mr. Shepka did not review all of the relevant evidence in analyzing whether Defendant had tax liability for the years in question. As the Government points out, however, Mr. Shepka testified during the Government's rebuttal case that he had reviewed additional evidence which did not change the opinions he had proffered during the Government's case-in-chief. The Government also identifies evidence other than the

testimony of Mr. Shepka that supported the tax evasion charges.

Defendant also argues a judgment of acquittal on the tax evasion charges is appropriate because his expert, Theodore Gelt, proffered opinions at trial that contradicted those of Mr. Shepka and that the only plausible explanation for the jury's failure to return a judgment of acquittal in light of such testimony is that the Government improperly led them to believe that Mr. Gelt was not credible. This is yet another example of an attempt by Defendant to have me impermissibly re-weigh the evidence and assess the credibility of witnesses. *Burks, supra.* This argument therefore fails to support Defendant's request for a judgment of acquittal on the tax evasion charges.

Because there was sufficient evidence presented to support the tax evasion charges, Defendant is not entitled to a judgment of acquittal on these charges. Since the jury failed to reach a verdict, however, it is appropriate for me to declare a mistrial on the tax evasion charges.

**4. Charges for Willful Failure to File Tax Returns (Counts 23 through 28)**

In support of his request for a judgment of acquittal on Counts 23 through 28 for willful failure to file tax returns, Defendant cites testimony of himself and Mr. Shires regarding a purported letter from the IRS excusing Defendant from filing tax returns so long as he carried forward a net operating loss. Significantly, this purported letter was not introduced into evidence at trial, and Mr. Shepka testified that he had never seen such a letter in the approximately 30 years that he had worked as a revenue agent for the IRS. Mr. Shepka further testified that the existence of such a letter would not have excused Defendant's filing requirements in any event since the duty to file is based on gross income. Accordingly, there was sufficient evidence for the jury to conclude that Defendant was obligated to file tax returns

9

for each of the years in question notwithstanding the witness testimony regarding the purported IRS letter.

Defendant further argues that he should be acquitted on the charges for willful failure to file tax returns because counsel for the Government misstated Mr. Shires' testimony regarding the purported IRS letter excusing Defendant from filing tax returns for the years in question when he stated in rebuttal closing argument that Mr. Shires had not personally seen this letter. Government counsel acknowledges that this characterization of Mr. Shires testimony in closing argument was inaccurate but notes that the jury was instructed that statements and arguments by counsel were not evidence and that it had to base its decision solely on the evidence that the jury saw and heard in court. Since Defendant's argument based on allegedly improper conduct by counsel for the Government does not address the sufficiency of the evidence under Fed. R. Crim. P. 29, it is appropriate for consideration only in the context of Defendant's motion for a new trial. Finally, Defendant argues that the uncontradicted expert testimony of Mr. Gelt that Mr. Shires could not retroactively create compensation to Defendant by reclassifying previously booked loans to Defendant mandates a judgment of acquittal on Counts 23 through 28. As the Government points out, however, the jury was instructed that it was not required to accept the testimony on an expert witness. I am therefore unable to conclude that there was insufficient evidence to support Defendant's conviction on Counts 23 through 28 based on Mr. Gelt's testimony without impermissibly re-weighing the evidence and the credibility of witnesses. *Burks, supra.*

Having failed to demonstrate that no reasonable jury could find Defendant guilty beyond a reasonable doubt on Counts 23 through 28 of the Indictment based on the evidence presented at

trial, Defendant's motion for judgment of acquittal on these charges must fail.

**B. Motion for a New Trial**

**1. Jury Selection**

Defendant asserts that he was deprived of his right to a fair trial because the jury "was not adequately questioned in the area of wrongful convictions" so as to reduce the risk that they would be "misled and manipulated" and not require the Government to prove its case beyond a reasonable doubt. This argument must be rejected because I have latitude in the conduct of voir dire, *United States v. Visinaiz,* 428 F.3d 1300, 1313 (10th Cir. 2005), *cert. denied,* 546 U.S. 1123 (2006), and there is no basis to conclude that my purported failure to adequately address these issues in any way affected Defendant's right to a fair trial before an impartial jury. Defendant is therefore not entitled to a new trial based on the jury selection process.

**2. Exclusion of Schlosberg Testimony**

Defendant states that the evidence presented at trial regarding the "enormous economic value" of VPC would have been more compelling "had the Court not [erroneously] disallowed defense expert Schlosberg, who would have testified that the technology was worth tens or hundreds of millions of dollars to Octane." In a footnote, Defendant further states (1) that the Court's conclusion that Mr. Schlosberg's expert analysis was unreliable because it did not mirror that which he would have done for Exxon was erroneous because Mr. Schlosberg's analysis was determining the value of VPC to Octane, the owner of the technology, and not to Exxon or another potential licensor of the technology; and (2) that the Court's conclusion that Mr. Schlosberg's expert analysis was unreliable because it was based on his assumptions was erroneous because Mr. Scholsberg testified that his assumptions were essential, typical, and

11

conservative.

Notably, Defendant provides no citations to the record or legal authority to support a finding that the exclusion of Mr. Schlosberg's testimony was in error. Mr. Schlosberg's testimony was excluded after careful consideration of the principles set forth in *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1983), and Fed. R. Evid. 702. Accordingly, there is no basis to depart from the general rule disfavoring motions for a new trial based on the exclusion of Mr. Schlosberg's proposed expert testimony.

### 3. Expert Testimony by Non-Expert Witnesses

Defendant objects to the trial testimony of Mr. Marshall, Thomas Reed, Shivayam Ellis-Rechenmacher, and Justin Buckmaster because these witnesses offered "technical explanations" despite the fact that they were neither offered nor qualified as expert witnesses. A review of the testimony of these witnesses, however, demonstrates that they offered limited technical information that was appropriate to put their testimony regarding what they told Defendant about test results on VPC at NIPER and NAFF in context. *See Davoll v. Webb,* 194 F.3d 1116, 1138 (10th Cir. 1999) (testimony of a treating physician does not fall within the scope of Fed. R. Evid. 702 if physician testifies about observations based on personal knowledge and states "expert" facts in order to explain testimony). Furthermore, throughout the testimony of these witnesses, I repeatedly instructed the jury that they were being called strictly as fact witnesses to testify as to what they did and as to any communications they may have had with Defendant, and I sustained objections by defense counsel when the Government sought to elicit testimony outside of these parameters. Under these circumstances, Defendant's argument that the testimony of these witnesses was erroneously admitted because they were neither offered nor qualified as experts

12

must fail.

Defendant also argues that the Government's failure to qualify or offer Mr. Marshall, Dr. Reed, Mr. Ellis-Recehenmacher, and Mr. Buckmaster as experts deprived him of an opportunity to effectively cross-examine these witnesses and improperly shifted the burden of proof to him to disprove their testimony. Specifically, Defendant argues that his counsel was unable to effectively question Mr. Marshall about the data from the NIPER test results that he testified he told Defendant was in error or to effectively question the NAFF witnesses about what they told Defendant regarding the tests they performed on VPC because in order to do so defense counsel would have had to treat these witnesses as experts. The problem with this argument is that it is predicated on strategic decisions by defense counsel not to pursue certain lines of inquiry with these witnesses rather than any rulings by the Court precluding defense counsel from asking certain questions of these witnesses. As such, any analysis of the impact that the Governments' failure to offer or qualify these witnesses as experts had on cross-examination by defense counsel is wholly speculative and cannot provide the basis for granting Defendant a new trial. *See Luce V. United States,* 469 U.S. 38, (1984) (district court's *in limine* ruling permitting impeachment with a prior conviction was not subject to appellate review where defendant did not testify at trial, in part, because any possible harm from the ruling was wholly speculative).

Implicit in Defendant's arguments regarding the alleged expert testimony by lay witnesses is an assertion that expert testimony was necessary to support the Government's case against Defendant. As aptly noted by the Government, however, the fraud charges against Defendant were predicated not on the validity of the science behind VPC but on representations Defendant made regarding, among other things, results of testing conducted by NIPER and

13

NAFF. Government witnesses Marshall, Reed, Ellis-Rechenmacher, and Buckmaster provided proper lay testimony that was unquestionably relevant to these representations. Defendant is therefore not entitled to a new trial based on the trial testimony of these witnesses.

### 4. Prosecutorial Misstatement Regarding IRS Letter

As previously set forth, Government counsel acknowledges that he mischaracterized Mr. Shires' testimony regarding the purported IRS letter excusing Defendant from filing tax returns for the years charged when he stated in rebuttal closing argument that Mr. Shires had not personally seen this letter. Nonetheless, the Government argues that this error does not entitle Defendant to the relief requested under the applicable plain-error standard. I agree.

"A plain error that affects substantial rights may be considered even though it was not brought to the court's attention." Fed. R. Crim. P. 52(b). "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects the defendant's substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Taylor,* 514 F.3d 1092, 1100 (10th Cir. 2008). To "affect substantial rights," an error must generally be "prejudicial: It must have affected the outcome of the district court proceedings." *United States v. Olano,* 507 U.S. 725, 734 (1993). Defendant bears the burden of persuasion that the error was prejudicial. *Id.*

The jury in this case was instructed that statements and arguments by counsel were not evidence and that it had to base its decision solely on the evidence that the jury saw and heard in court. It is presumed that the jury followed these instructions, *Taylor*, 514 F.3d at 1100, and Defendant has not pointed to anything apart from pure speculation to suggest otherwise. Further, as set forth above, there was evidence presented at trial which contradicted the

14

testimony of Defendant and Mr. Shires regarding the existence of the purported IRS letter. Under these circumstances, Defendant has failed to meet his burden of demonstrating that Government counsel's misstatement about Mr. Shires' testimony affected the outcome of the charges for willful failure to file tax returns, and Defendant is therefore not entitled to a new trial on this basis.

### 5. Other Alleged Prosecutorial Misconduct

Defendant, who testified at length, argues that Government counsel also misstated that Mr. Marshall had told Defendant what the correct data point for the NIPER test results should have been and that investors in Energos were owed money. With respect to Government counsel's statement in closing argument that the Energos investors were owed money, there was evidence at trial that supported this conclusion, and Government counsel's statement therefore does not constitute error. Conversely, Government counsel's questions predicated on Mr. Marshall's supposed conveyance of the correct data point for the NIPER test results in her cross-examination of Defendant is not supported by Mr. Marshall's testimony. Once again though, the jury presumably followed the instructions that the statements and arguments by counsel were not evidence. Further, Defendant's conclusion that "this bad faith question to [Defendant] implicitly accused [him] of lying, and the jury must have thought the prosecutor had a good faith basis for doing so" does not follow from a review of the applicable portions of the record.

Defendant also complains that the Government acted improperly by asking investor witnesses "hypothetical, negatively loaded questions" such as "[i]f you had known that the test results were false, that [Defendant] had been told by the person who performed the tests that the date (sic) was unreliable, would this have affected your investment decision?" Defendant argues

15

that this type of question was improper because it implied that Mr. Marshall had expressed his expert opinion that the data was unreliable and that Defendant had ignored this expert. In fact, however, this type of question reflects what Defendant was told about the test results and is directly relevant to the materiality element of the mail fraud charges. Any impropriety in the form of these questions was also offset by the jury instructions that the statements and questions of counsel were not evidence. I likewise reject Defendant's argument that this type of question, which was predicated on introduced evidence, constituted an improper expression of Government counsel's opinion of Defendant's guilt.

Defendant takes issue with other alleged instances of misconduct by Government counsel that he characterizes as "cheap shots" that "tarnished and smeared [Defendant] by whatever means available." These largely unsupported accusations are without merit. Although as already noted a few prosecutorial mistakes may have been made over the course of this trial which lasted over seven weeks, I conclude that these mistakes were of minor significance and did not deprive Defendant of his right to a fair trial. *See Lutwak v. United States,* 344 U.S. 604, 619 (1953) ("A defendant is entitled to a fair trial but not a perfect one."). Accordingly, none of the alleged prosecutorial misconduct, either alone or in combination, warrants the exceptional relief of a new trial.

**6. Evidence of Improper Investigation**

Under Fed. R. Evid. 103(a) and prior to trial in this case, I conditionally granted the Government's Motion *In Limine* to Exclude Evidence of Reasons for Investigation and Manner in Which Investigation was Conducted. The Order was not "definite" pursuant to Rule 103(a), and Defendant acknowledges that he was permitted to attack the manner of the Government's

investigation at trial but argues that my rulings in this regard were inconsistent. Defendant further argues that these purportedly inconsistent rulings prevented him from presenting a complete defense. Specifically, Defendant asserts that he was improperly precluded from presenting evidence regarding (1) the Government's efforts to enlist witnesses in a class-action lawsuit against Defendant; and (2) "the bizarre accusations and actions of [G]overnment investigators which showed they were out to influence witnesses against [Defendant] and ... to convict [Defendant] without regard to fairness and truth."

Regarding the first category of evidence, Defendant does not provide any citations to the record to demonstrate that he sought to introduce such evidence and was denied the opportunity to do so. Defendant's response to the Government's motion *in limine* also fails to specifically reference his intent to introduce such evidence. Under these circumstances, there is no basis to conclude that Defendant was definitively precluded from presenting evidence regarding the purported class action lawsuit, and no finding of error can be predicated on any such preclusion.

With respect to Defendant's alleged preclusion from questioning witnesses regarding the accusations and actions of Government investigators, Defendant identifies only one witness, Alden Kautz, with whom he was purportedly unable to pursue this line of questioning. As the Government notes, however, Mr Kautz did testify about questionable conduct by the EPA Special Agent Cory Rumple. The Government also identifies other evidence and argument that Defendant was permitted to introduce regarding the reasons for the investigation of him and the manner in which it was conducted. Faced with this evidence, there is no basis to conclude that Defendant was prevented from presenting a complete defense based on his inability to question witnesses regarding the accusations and actions of Government investigators.

17

In conclusion then, none of the alleged trial errors, either alone or in combination, warrant the granting of a new trial under Fed. R. Crim. P. 33.

For the reasons set forth above, IT IS ORDERED that

1. Defendant's Rule 29 Motion for Judgment of Acquittal and Rule 33 Motion for a New Trial [Doc # 498], is DENIED; and

2. Judgment for a mistrial shall be entered on Counts 19 through 22, which charged Defendant with tax evasion.


Dated: January   9  , 2009 in Denver, Colorado.

                                                BY THE COURT:

                                                  s/Lewis T. Babcock
                                                LEWIS T. BABCOCK, JUDGE