IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Judge

Criminal Case No. 06-cr-00192-LTB

UNITED STATES OF AMERICA,

      Plaintiff,

v.

WILLIAM ORR,

      Defendant.

_____

## ORDER

_____

This matter is before me on Defendant's Rule 33 Motion for a New Trial Based on

Newly Discovered Evidence [Doc # 588] and Defendant's Second Rule 33 Motion for a New

Trial Based on Newly Discovered Evidence from Prosecution Witnesses Thomas Reed and

William Marshall [Doc # 599].  After consideration of the motions, all related pleadings, and the

case file, I deny the motions as set forth below.

## I.  Background

On May 28, 2008, following an eight week trial, the jury returned its verdict finding

Defendant guilty of the following counts in the Indictment: (1) Counts 1 through 8, which

charged Defendant with a scheme to defraud and to obtain money from a group of people who

invested in Octane International Ltd. ("Octane"); (2) Counts 9 through 14, which charged

Defendant with a scheme to defraud and to obtain money from the United States government; (3)

Counts 15 and 17, which charged Defendant with the submission of false documents to the

Environmental Protection Agency (the "EPA"); and (4) Counts 23 through 28, which charged

Defendant with willfully failing to file tax returns.  The jury failed to reach a verdict on Counts

19 through 22, which charged Defendant with tax evasion, and I have declared a mistrial on

these counts.  Counts 16 and 18 of the Indictment were dismissed prior to trial.

By his first motion for a new trial, Defendant argues that newly discovered evidence

consisting of statements Anthony O'Riordan would likely have resulted in Defendant's acquittal

on the charges for investor fraud (Counts 1 through 8) and would further have altered the jury's

view on his representations and communications on other issues such that he would likely have

been acquitted on all counts.  Specifically, Mr. O'Riordan has provided a declaration in which he

states that he participated in a number of meetings with Defendant and Martin Wade of

Prudential between 1998 and 2001and that it was his understanding that Prudential was "very

seriously interested" in providing funding to Octane once Octane took "certain steps" and

"accomplished several key objectives."  According to Mr. O'Riordan, this funding would be

used for, among other things,  the construction of several large dimethyl carbonate facilities,

each of which would cost $500 million to construct, and the marketing of VPC .  Mr. O'Riordan

also states that Defendant's representations in letters to Octane shareholders and business plans

regarding Prudential and meetings in Bahrain with Premba Kentz and others are reasonable,

accurate, and consistent with his recollections and that he understood that VPC was EPA-

approved and that the EPA had officially granted Aspen Petroleum permission to market VPC.

By his second motion for a new trial, Defendant argues that newly discovered evidence

consisting of testimony by Dr. Thomas Reed and William Marshall at his sentencing hearing

would likely have resulted in Defendant's acquittal on the charges for investor fraud (Counts 1

through 8), government fraud (Counts 9 through 14), and submission of a false document to the

EPA (Count 17).  Specifically, Defendant cites testimony from Dr. Reed that negative laboratory

test results are sometimes attributable to lab equipment that is ill-suited to produce data useful for scale-up and that the single cylinder Honda engine used in the NAFF tests was an example of lab equipment that was ill-suited to produce useful data. Defendant argues that this testimony demonstrates that no meaningful conclusions could be drawn from Dr. Reed's "implied opinion" that the NAFF tests failed to demonstrate any improvement in engine efficiency or emission reductions from the use of VPC. Defendant also cites testimony from Dr. Reed that adding MMT to gasoline boosts octane and that he was unaware of an EPA report finding that adding MMT to gasoline resulted in reduced NOx emissions. Defendant argues that this testimony further undermines Dr. Reed's "implied opinion" about the results of the NAFF tests.

With respect to Mr. Marshall, Defendant cites his testimony at the sentencing hearing that (1) he was unaware of the EPA report finding that adding MMT to gasoline resulted in reduced NOx emissions; (2) MMT is a known octane booster; and (3) the value of an octane boost is 2 cents per gallon. Defendant argues that this testimony supports Defendant's trial testimony that the NIPER test results demonstrate NOx reduction from the use of VPC and the valuation of Defendant's patents by Dr. Scholsberg, who was not permitted to testify as an expert at trial. Defendant also provides a declaration from Frank Cox in which Mr. Cox states that Mr. Marshall told him that the one bad data point from the NIPER test results that he testified at trial he had told Defendant about did not invalidate all of the test results. Defendant argues that this is in direct contradiction to Mr. Marshall's trial testimony that the one bad data point contradicted the positive statements about the NIPER test results that Defendant put in various newsletters.

By separate order, I granted Defendant's motion for joint consideration of the two

motions for a new trial based upon newly discovered evidence and will proceed to analyze the

motions accordingly.

## II.  Standard of Review

Under Fed. R. Crim. P. 33, a court may grant a new trial upon request "if the interest of

justice so requires."  A motion for a new trial is regarded with disfavor, *United States v.*

*Quintanilla,* 193 F.3d 1139, 1146 (10th Cir. 1999), *cert. denied,* 529 U.S. 1029 (2000), and

should only be granted in exceptional cases where the evidence preponderates heavily against

the verdict.  *United States v. Evans,* 42 F.3d 586, 593-4 (10th Cir. 1994).

When a motion for a new trial is based on newly discovered evidence, the defendant must

show (1) that the evidence was discovered after trial; (2) that the failure to learn of the evidence

was not caused by his own lack of diligence; (3) that the new evidence is not merely impeaching

or cumulative; (4) that the new evidence is material to the principal issues involved; and (5) that

the new evidence is of such a nature that in a new trial it would probably produce an acquittal.

*United States v. Trujillo,* 136 F.3d 1388, 1394 (10th Cir. 1998); *United States v. Sinclair,* 109

F.3d 1527, 1531 (10th Cir. 1997).

## III.  Analysis

The Government first argues that Defendant's motion for a new trial based on the

testimony of Dr. Reed and Mr. Marshall at the sentencing hearing should be denied on the basis

that this motion is really an untimely motion asking me to reconsider my order denying

Defendant's previous motion for a new trial.  *See* Doc # 538.  In support of this argument, the

Government relies on the fact that Defendant's previous motion for a new trial was predicated, in

part, on his assertion that the testimony of Dr. Reed and Mr. Marshall was erroneously admitted

at trial because it constituted expert testimony by lay witnesses.  Although Defendant's current

motion for a new trial based on the testimony of these witnesses raises this same issue, it does so

primarily to support Defendant's argument that he could not have discovered this evidence

earlier.  Defendant's motion for a new trial based on the testimony of Dr. Reed and Mr. Marshall

makes other arguments about their testimony at the sentencing hearing as well.  I therefore

decline to re-characterize this motion as one for reconsideration and will analyze it, along with

Defendant's motion for a new trial based on the statements of Mr. O'Riordan, under the

standards set forth above.

**A.  Discovery of the Evidence**

### 1.  Mr. O'Riordan's Statements

Defendant argues that he only discovered the testimony that Mr. O'Riordan would

provide at trial when he received a copy of the letter Mr. O'Riordan provided to the Court on

April 9, 2009.  For the reasons pointed out by the Government, this argument is easily dismissed

with respect to Mr. O'Riordan's proposed testimony regarding the interest of Prudential and

other parties in Octane and its technology based on his presence at meetings with representatives

of these parties.  Most importantly, Defendant was also present at the meetings about which Mr.

O'Riordan would testify and undisputably knew about Mr. O'Riordan's participation in these

meetings prior to trial.

Defendant argues that although he knew that Mr. O'Riordan was present for the meetings

with Prudential and other parties interested in Octane and its technology he did not necessarily

know what testimony Mr. O'Riordan would provide regarding these meetings.  Since Mr.

O'Riordan would presumably provide truthful testimony regarding Defendant's meetings with

Prudential and others, this argument is unconvincing.  Moreover, the fact that Defendant

unsuccessfully sought to have Mr. O'Riordan testify at trial demonstrates his prior knowledge

that Mr. O'Riordan's testimony could be helpful to his defense.  Additionally, the testimony

relating to Mr. O'Riordan that was elicited at trial by defense counsel demonstrates that

Defendant was also aware of the nature of the testimony that Mr. O'Riordan could provide

regarding Prudential and other parties that were purportedly interested in Octane and its

technology.  *See*  5/12/09 Transcript at p. 185, ll. 8-9 (Defendant: "Mr. O'Riordan was very

much involved in these conversations in the Middle East.").

Under these circumstances, the proposed testimony of Mr. O'Riordan regarding the

interest of Prudential and other parties in Octane and its technology does not constitute newly

discovered evidence.  *See e.g. United States v. Muldrow,* 19 F.3d 1332, 1339 (10th Cir. 1994)

("... evidence is not newly discovered if the defendant was aware of the proposed testimony prior

to trial.").  To the extent that Defendant may not have known about Mr. O'Riordan's

understanding regarding EPA approval of VPC prior to trial, Mr. O'Riordan was clearly

mistaken in this regard, and any testimony on this issue fails to satisfy other considerations under

Rule 33 as discussed further below.

### 2.  Dr. Reed and Mr. Marshall's Testimony

Defendant argues that he only discovered the testimony of Dr. Reed and Mr. Marshall

referenced above at the sentencing hearing.  As the Government points out, however,

Defendant's motion contradicts this argument with respect to Dr. Reed.  Specifically, Defendant

asserts that Dr. Reed's testimony about ill-suited laboratory equipment is so well-settled that it

"was something he had to admit."  Dr. Reed's testimony on this issue therefore does not

constitute newly discovered evidence.

Since there is no evidence to suggest otherwise, I will assume that Defendant did not

know about the other testimony of Dr. Reed and that of Mr. Marshall prior to the sentencing

hearing.  This testimony, however, fails to satisfy other considerations under Rule 33 as

discussed further below.

**B.  Diligence of Defendant**

### 1.  Mr. O'Riordan's Statements

Because I have concluded that Defendant was aware of Mr. O'Riordan's proposed

testimony regarding meetings with Prudential and others prior to trial, I need not address

whether Defendant's purported failure to learn of this evidence until after the trial was the result

of his own lack of diligence.  In any event, Mr. O'Riordan advised Defendant prior to trial that

he would not be able to testify as a result of his professional obligations as the investment

advisor to Prime Minister Morgan Tsvangirai of Zimbabwe, a country that was then in a state of

great upheaval.  In light of Mr. O'Riordan's unique and pressing responsibilities, I will assume

that any failure by Defendant to discover any of Mr. O'Riordan's proposed testimony was not

the result of a lack of diligence on his part.

### 2.  Dr. Reed and Mr. Marshall's Testimony

Defendant argues the sentencing hearing provided him with his first opportunity to

explore the "expert" opinions of Dr. Reed and Mr. Marshall because neither of these witnesses

were offered or qualified to testify as experts at trial.  Defendant asserts that it would therefore

have been inappropriate for him to inquire into the areas of the newly discovered evidence at

trial and that he had no reason to question them about these areas prior to trial since they were

not supposed to offer expert opinions at trial.

As discussed in Defendant's previous motion for a new trial, Defendant's argument that

he was unable to effectively cross-examine Dr. Reed and Mr. Marshall at trial due to their status

as lay witnesses is predicated on strategic decisions by defense counsel as opposed to any rulings

from the court precluding defense counsel from asking certain questions of these witnesses.

Furthermore, this argument does not explain Defendant's failure to seek this information from

these witnesses, whose status as Government witnesses was long known to Defendant, prior to

trial.  Although Defendant argues that he did not know they would be offering what he

characterizes as expert opinions at trial, he did know of the Government's intention to have these

witnesses testify about what they told Defendant about their testing of VPC.  In fact, Defendant

repeatedly objected to this testimony on the basis that it was improper expert opinion testimony.

Having anticipated that Dr. Reed and Mr. Marshall would be offering what he characterizes as

expert opinions at trial, Defendant cannot now claim surprise as to the nature of their testimony.

Under these circumstances, Defendant has failed to show that any failure on his part to

discover the subject testimony of Dr. Reed and Mr. Marshall was not caused by his own lack of

diligence.

## C.  Nature of the Evidence

### 1.  Mr. O'Riordan's Statements

As set forth in the Government's response to the motion, evidence was presented at trial

regarding the meetings about which Mr. O'Riordan would testify.  In addition, Defendant argues

that Mr. O'Riordan's testimony at trial, including that regarding his mistaken beliefs about EPA

approval of VPC, would have "corroborated the recollections and representations of

[Defendant]."   Mr. O'Riordan's testimony therefore would have been cumulative, and the nature of this testimony does not support granting Defendant a new trial.

### 2.  Dr. Reed and Mr. Marshall's Testimony

By Defendant's motion for a new trial, it is apparent that the new evidence relating to Dr. Reed and Mr. Marshall would largely be offered for impeachment.  *See* motion, pp. 5 ("[C]ross-examination of [Dr.] Reed similar to that conducted at sentencing would have destroyed the value of his conclusions that the feul tests showed no benefits.") & 9 ("[Mr. Marshall's] trial testimony is now contradicted by his out-of court statement to Cox that one bad data point does not invalidate the rest of the data.").  Nonetheless, it cannot be said that this evidence, some of which introduces new relevant facts, is *merely* impeaching, and Defendant's motion for a new trial cannot be denied on the basis of this Rule 33 consideration.  This consideration alone, however, does not warrant the relief requested. *Trujillo, supra; Sinclair, supra.*

## D.  Materiality of the Evidence

### 1.  Mr. O'Riordan's Statements

Defendant argues that the effect of Mr. O'Riordan's testimony, including his mistaken beliefs about EPA approval of VPC, would be to bolster Defendant's credibility.  Because Defendant's credibility was a principal issue throughout the trial, Mr. O'Riordan's testimony regarding the interest of Prudential and other parties in Octane and its technology would be material.  The materiality of this evidence, however, is but one of five factors to be considered in reviewing Defendant's motion for a new trial and does not by itself warrant the relief requested. I further note that Mr. O'Riordan's testimony concerning his mistaken beliefs regarding EPA's approval of VPC is not material to Defendant's credibility since Defendant clearly knew

otherwise.

### 2.  Dr. Reed and Mr. Marshall's Testimony

Defendant argues that the effect of the new evidence relating to Dr. Reed and Mr.

Marshall would be to eliminate all evidence that Defendant ever misrepresented the test results

or the value of VPC.  Although Defendant overstates the possible effect of this evidence, it

cannot be said that it is not material to Defendant's representations.  The materiality of this

evidence, however, is but one of five factors to be considered in reviewing Defendant's motion

for a new trial and does not by itself warrant the relief requested.  I further note that the evidence

concerning the value of octane boosts would not have altered my decision to exclude the expert

testimony of  Dr. Schlosberg since this decision was based on a number of concerns about the

reliability of this testimony after careful consideration of the principles set forth in *Daubert* and

Fed. R. Evid. 702.

### E.  Likely Impact of the Evidence

### 1.  Mr. O'Riordan's Statements

Defendant's argument that Mr. O'Riordan's testimony on certain issues in a new trial

would bolster Defendant's credibility on all issues and therefore likely result in his acquittal on

all charges is unconvincing.  As set forth in his declaration, Mr. O'Riordan's testimony would be

limited in scope and address only a few of the misrepresentations the indictment alleges that

Defendant made in furtherance of his scheme to defraud investors in Octane.  Under these

circumstances, it is unlikely that Mr. O'Riordan's testimony would result in Defendant's

acquittal on the investor fraud counts let alone the other counts for which he was convicted.

### 2. Dr. Reed and Mr. Marshall's Testimony

Defendant argues that the jury convicted him on the various counts because it "apparently relied upon the expert credentials of [Dr.] Reed and [Mr.] Marshall to attach significance to their implied opinions as allegedly expressed to Orr." Defendant further argues that if you "[t]ake away the conclusions that anything negative [these witnesses] may have said to [Defendant] about the technology or the testing was valid, and you take away the idea that [Defendant] ever misrepresented the data or the technology."

As pointed out by the Government, this argument mirrors that made in his previous motion for a new trial and throughout the trial of this case about improper expert testimony. I have already rejected this argument based on repeated limiting instructions to the jury that Dr. Reed and Mr. Marshall were testifying strictly as fact witnesses regarding what did and what they communicated to Defendant, as well as the fact that the testimony of these witnesses included only limited technical information that was necessary to put the remainder of their testimony in context. This same reasoning applies with equal force to Defendant's argument that the new evidence will refute "expert" opinions rendered by these witnesses and therefore probably produce an acquittal.

A review of the new evidence identified by Defendant further demonstrates that its introduction at a new trial is not likely to produce an acquittal. First, with respect to Dr. Reed's testimony about the suitability of the engine used for the NAFF tests and the suitability of test equipment generally, Defendant's motion asserts that "[Dr.] Reed had no expertise in scale-up from laboratory research (bench scale tests) to full scale operations, and no expertise in engine testing." Presumably, this lack of expertise would come out at trail if Dr. Reed were to testify on

11

these issues, and it is not probable that the jury would reach a different decision on this basis. Additionally, Defendant's argument with respect to Dr. Reed ignores the fact that Dr. Reed's testimony at the sentencing hearing would not alter his trial testimony about what he communicated to Defendant regarding the NAFF tests on VPC.

With respect to Mr. Marshall, Defendant ignores the fact that Mr. Marshall's knowledge about the general effect of adding MMT to gasoline has limited relevance to what he communicated to Defendant about testing on Defendant's specific fuel formulation.  Defendant also reads more into Mr. Cox's declaration than is evident from the statements set forth therein. Specifically, Mr. Cox. states that he asked Mr. Marshall "if, in his opinion, a single questionable data point negated the value of the entire dataset" and that Mr. Marshall's response was that "it did not."  It does not follow that this brief general exchange contradicted Mr. Marshall's trial testimony that specific positive statements about the NIPER test results that Defendant put in various newsletters were inconsistent with his communications with Defendant about one bad data point in the test results.

In conclusion then, Defendant has failed to demonstrate that the introduction at trial of any of the new evidence relating to Mr. O'Riordan, Dr. Reed, or Mr. Marshall, whether viewed separately or together, would probably produce an acquittal on any of the charges.

Because Defendant has not made the necessary showing for a new trial based on newly discovered evidence, IT IS HEREBY ORDERED that Defendant's Rule 33 Motion for a New Trial Based on Newly Discovered Evidence [Doc # 588] and Defendant's Second Rule 33 Motion for a New Trial Based on Newly Discovered Evidence from Prosecution Witnesses

Thomas Reed and William Marshall [Doc # 599] are DENIED.


Dated: July   20  , 2009 in Denver, Colorado.

BY THE COURT:


    s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE